IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICRO SIGNAL RESEARCH, INC,                    No C 05-mc-80067 VRW

        Plaintiff,                                         ORDER

        v

NURI OTUS and MAUREEN CUNNINGHAM,

        Defendants.
_____/

        Plaintiff Micro Signal Research, Inc (Micro) moves this court to issue a writ of attachment for defendants' California property located at 1872 Black Mountain Road in Hillsborough, California.  Doc #1.  In support of its motion, Micro offers an order from the United States District Court for the District of Massachusetts issuing a writ of attachment on defendants' California property.  Id, Ex 1.  Micro, citing the Full Faith and Credit Clause of the Constitution, initially argued that this court must "accept the decision issued in the sister state of Massachusetts as if it was a decision made in this court, and issue a writ of attachment in this matter."  Doc #2 at 3.

In its March 21, 2005, order, however, the court informed Micro that, because this case is based upon diversity jurisdiction, the Full Faith and Credit Clause is inapplicable.  See <u>Semtek Int'l Inc v Lockheed Martin Corp</u>, 531 US 497, 506-07 (2001) (stating that the Full Faith and Credit Clause does not govern the effect to be given to a judgment issued by a federal court sitting in diversity jurisdiction).  Doc #5 (Order).  Micro now concedes its error.

Accordingly, to inform the court's decision whether to grant Micro's motion for a writ of attachment, the parties were ordered to submit written memoranda addressing the following issues: (1) whether the federal court in Massachusetts had jurisdiction to attach defendants' real property located in California and (2) if such jurisdiction existed, what recognition this court is (a) <u>entitled</u> to give to the writ and (b) <u>required</u> to give to the writ.  Id at 2.  The parties submitted their memoranda on April 4, 2005.  Doc #6 (Pl Memo); Doc #7 (Def Memo).  Upon review of the parties' arguments, the court DENIES Micro's motion.

II

Micro initiated the underlying suit in the United States District Court for the District of Massachusetts asserting that defendants, an alleged "husband and wife con team," stole $210,000 from Micro.  Doc #6 at 1.  Understandably anxious whether defendants could satisfy a future monetary judgment entered against them, Micro moved the Massachusetts district court for a real estate writ of attachment on all real property owned by defendants, wherever located.  Id at 2.  The parties, both represented by counsel, fully briefed the issue regarding the prejudgment

2

attachment and appeared at a hearing before the Honorable Judge Edward F Harrington in Massachusetts. Judge Harrington found for Micro and issued a writ of attachment attaching all property "held in the name of [defendants] up to the amount of $210,000 located in California (including property located at 1872 Black Mountain Road, Hillsborough, California 94010) and Massachusetts." Doc #1, Ex 1 (Att Writ).

Micro asks this court to issue a writ of attachment based upon the writ issued by Judge Harrington.

A

The court first addresses whether Judge Harrington had jurisdiction to issue a writ directed toward defendants' real property located in California.

FRCP 64 makes available to litigants in federal diversity actions any prejudgment remedies available "under the circumstances and in the manner provided by the law of the state in which the district court is held." Accordingly, Judge Harrington was authorized to grant Micro any prejudgment relief available to it under the laws of Massachusetts. Thus the question for resolution is: Do the laws of Massachusetts authorize prejudgment attachment of real property located outside of Massachusetts?

Prejudgment attachments in Massachusetts are governed by Mass R Civ Pro 4.1 (hereinafter "Rule 4.1") and Mass Gen Laws ch 223, §§ 42-59. Rule 4.1(a) provides that "subsequent to the commencement of any action under these rules, real estate * * * may, in the manner and to the extent provided by law * * * be attached and held to satisfy the judgment for damages and costs

3

which the plaintiff may recover." Moreover, Mass Gen Laws ch 223, § 42 lists the property liable to attachment as "[a]ll real and personal property" unless specifically exempted by statute (e g, statutory exemptions for newspaper offices, boats and railroad cars). Neither party asserts that real property is subject to any statutory exception.

Micro argues that because Rule 4.1 and § 42 (when read concurrently) "allow[] for the attachment of all real property," there "is no jurisdictional limitation" and thus Judge Harrington had jurisdiction to attach defendants' real property in California. Doc #6 at 3 (emphasis in original). Defendants disagree, arguing that because Rule 4.1 does not contain an express authorization allowing for attachment of out-of-state property, Judge Harrington was not free to read such an authorization into the statute. Doc #7 at 3.

It does not appear that the Supreme Judicial Court of Massachusetts -- or any lower state court -- has ever passed upon the question now before this court. Luckily, one other federal district court has found itself presented with this same question. See Stephens v Walker, 743 F Supp 670 (WD Ark 1990) (Waters, CJ).

In Stephens, plaintiffs filed suit for wrongful death in Massachusetts federal court against defendant driver based upon a motor vehicle accident that occurred in Massachusetts. Id at 671. In the Massachusetts federal court, plaintiffs moved to attach "all real estate" owned by defendant. Id. The Massachusetts court, per Judge William Young, granted plaintiffs' motion for attachment, limited to $1,500,000 worth of defendant's real property. Nowhere in the body of the motion, the handwritten notations nor in the

**4**

attached affidavits, however, did Judge Young reflect the <u>location</u> of the real property to be attached.  Id.  Plaintiffs subsequently learned that defendant owned substantial real property in Arkansas and accordingly filed a motion for the issuance of an attachment of the Arkansas real property before Chief Judge Franklin Waters of the United States District Court for the Western District of Arkansas.  Judge Waters, however, refused to issue the writ of attachment, holding that Judge Young could not have intended to authorize the attachment of defendant's Arkansas property because "Rule 4.1 <u>clearly</u> suggests that it is limited to property located in Massachusetts."  Id at 673-74 (emphasis added).

Judge Waters based his holding on several internal provisions of Rule 4.1 itself.  First, Rule 4.1(b) requires that writs of attachment "be directed to the sheriffs of the several counties or their deputies."  Based upon this clear directive, Judge Waters concluded that such a writ "applies only to real property which the sheriffs or deputies of the various counties of Massachusetts are authorized by law to attach."  Id at 673.  Next, Rule 4.1(f)(ii) allows a court to issue a writ of attachment for personal property *ex parte* when "there is a clear danger that the defendant[,] if notified in advance of the attachment of the property[,] will * * * remove it from the state."  Judge Waters reasoned:  "If Massachusetts courts are empowered to attach property located out-of-state, there is no justification for the issuance of an *ex parte* order simply because the location of the property is to change."  Id.  Judge Waters concluded that these provisions evidence internal limitations on the territorial scope of Rule 4.1.  The court agrees.

5

Moreover, an internal provision not cited by Judge Waters additionally supports his interpretation of Rule 4.1: The Reporter's Notes to Rule 4.1 state explicitly that "Massachusetts writs run throughout the Commonwealth." (Emphasis added). Moreover, Mass Gen Laws ch 223, § 20 echoes this limitation by providing that process, with respect to writs, "may run, and shall be executed and obeyed throughout the Commonwealth." (Emphasis added).

Finally, Judge Waters concluded that he was required to interpret Rule 4.1 as limited to Massachusetts real property only because, if otherwise, Rule 4.1 "would be plainly unconstitutional." Id at 674. Judge Waters was referring to Rule 4.1(f)(i) which authorizes a court to issue a writ of attachment for real property *ex parte* when "the person of the defendant is not subject to the jurisdiction of the court in the [underlying] action." Accordingly, Rule 4.1(f)(i) purports to allow real property of a defendant to be seized even when the defendant-owner of the property is not subject to the personal jurisdiction of the Massachusetts courts.

It is impossible for Rule 4.1(f)(i) to meet the requirements of the Due Process Clause of the Fourteenth Amendment if the Rule is interpreted to apply to out-of-state property as well as in-state property. As Judge Waters observed: "[I]t would be absolutely impossible for a state constitutionally to attach real property located out-of-state owned by a non-resident not subject to the personal jurisdiction of the court." Stephens, 743 F Supp at 674 (emphasis added). In essence, construing Rule 4.1(f)(i) to apply extra-territorially would eradicate the

6

1 requirement of personal jurisdiction in Massachusetts.
2 Massachusetts cannot do this.
3        An alternative interpretation, while still troubling, can
4 be squared with the requirements of due process.  If the court
5 construes Rule 4.1(f)(i) as applicable only to in-state real
6 property, then it would appear that Rule 4.1 allows Massachusetts
7 courts to exercise *quasi in rem* jurisdiction over a defendant (i e,
8 jurisdiction over a defendant simply because he or she owns real
9 property in the state).  The Supreme Court, however, eradicated
10 *quasi in rem* jurisdiction in Shaffer v Heitner, 433 US 186 (1977),
11 holding instead that the standard for determining personal
12 jurisdiction under the Due Process Clause is the minimum contacts
13 standard announced in International Shoe Co v Washington, 326 US
14 310 (1945).  Shaffer, 433 US at 207.  In Shaffer the Court stated
15 that the presence of real property in a state could potentially
16 satisfy the minimum contacts analysis:  "[T]he presence of property
17 in a State may bear on the existence of jurisdiction by providing
18 contacts among the forum State, the defendant, and the litigation."
19 Id.  Accordingly, interpreting Rule 4.1(f)(i) as applicable only to
20 in-state property would meet the requirements of the Due Process
21 Clause so long as Shaffer's requirement that the real property be
22 somehow related to the litigation is impliedly "read" into the
23 statute.  Such an implied reading of Rule 4.1(f)(i) is wholly
24 permissible, for "we presume that in interpreting a statute the
25 Legislature had knowledge of [C]onstitutional requirements existing
26 when it enacted or amended the statute."  School Committee of
27 Greenfield v Greenfield Education Association & Others, 385 Mass
28 70, 80 (1982).  If, however, Rule 4.1 applies extra-territorially,

7

1 no amount of statutory stretching could square it with the
2 Constitution.
3        Based on the forgoing legal analysis, Judge Waters stated
4 that Arkansas canons of statutory construction required him to
5 construe Rule 4.1 as to encompass only property located within
6 Massachusetts.  Id ("If it is possible for the courts to so
7 construe an act that it will meet the test of constitutionality,
8 they not only may, but should and will, do so") (quoting Heber
9 Springs School District v West Side School District, 296 Ark 148
10 (1980)).
11        The Supreme Court of California's canons of statutory
12 construction (which this court must apply in diversity cases)
13 likewise require this court to interpret Rule 4.1 so as to apply
14 only to real property located within the borders of Massachusetts.
15 See Miller v Municipal Court of the City of Los Angeles, 22 Cal 2d
16 818, 828 (1943) ("If a statute is susceptible of two constructions,
17 one of which will render it constitutional and the other
18 unconstitutional in whole or in part, * * * the court will adopt
19 the construction which * * * will render it valid in its entirety,
20 or free of doubt from its constitutionality, even though the other
21 construction is equally reasonable.") (citation omitted).
22        In a footnote, Micro makes its only attempt to
23 distinguish Stephens.  See Doc #6 at 4n3.  Micro claims that
24 Stephens "is not directly correlative of the facts" in the present
25 case because, in Stephens, Judge Waters "made [his] ruling based
26 upon the 'presumption' that the attachment order issued by [Judge
27 Young] was directed only at Massachusetts property," Judge Young
28 did not specifically evidence an intent for the writ to have extra-

8

1 territorial effect.  Id.  Judge Harrington. however, evidenced a
2 clear intention for the current writ to apply extra-territorially
3 (i e, for the writ to attach defendants' California property).
4 While this is indeed a distinguishing characteristic between
5 Stephens and the present case, it is a distinction without a
6 difference.  A judge's intention does not control the scope of his
7 order – its terms and his authority (or lack thereof) control.  In
8 Stephens, the absence of extra-territorial terms in Judge Young's
9 order as well as his lack of authority to issue an extra-
10 territorial writ, convinced Judge Waters that Judge Young did not
11 intend the writ to apply outside of Massachusetts.  Thus, Judge
12 Young's intent was not a factor in Judge Waters' analysis; it was
13 simply a byproduct of analyzing the terms of the writ and the scope
14 of Judge Young's authority.  Accordingly, Micro's argument that
15 Stephens was based upon the presumption that Judge Young did not
16 intend the writ to apply extra-territorially is simply incorrect.
17 And while Judge Harrington's order in the present case does contain
18 extra-territorial language purporting to attach defendants'
19 California property, his authority to do so (under the Constitution
20 and laws of Massachusetts) still serves to limit the scope of his
21 order.
22      In light of the foregoing, Rule 4.1, must be confined to
23 the attachment of real property located within the State of
24 Massachusetts.  Accordingly, because Rule 4.1 does not apply extra-
25 territorially, Judge Harrington was without jurisdiction, pursuant
26 to FRCP 64, to direct the writ of attachment in this case to
27 defendants' property located here in California.
28

**B**

Because the court determines that Judge Harrington was without jurisdiction under Massachusetts law to attach defendants' California property, the court need not address whether California <u>could</u> or <u>would</u> have recognized and enforced the foreign writ.

**III**

In sum, the court DENIES Micro's motion for a writ of attachment of defendants' real property located in California (Doc #1). The clerk is directed to CLOSE the file and TERMINATE all motions.

IT IS SO ORDERED.

/s/

VAUGHN R WALKER

United States District Chief Judge